April 20, 2016

Ms. Kimberly Bradley
COO/CFO
Highline United, LLC.
Modern Shoe Company, LLC.
101 Sprague Street
Hyde Park, MA 02136

Dear Ms. Bradley:

This letter will confirm, pending [Any required] court approval, the engagement of B Erickson Group LLC ("BEG") by Highline United, LLC. And Modern Shoe Company, LLC, (hereinafter, collectively, "you," the "Client" or the "Company"). By executing this agreement, you hereby engage BEG to provide Chief Restructuring Officer ("CRO") interim management services and related advisory support to you during Project Sample. Specific scope, fees, billing, and engagement terms and conditions are described below:

**Scope:**

1. Assisting as necessary in court related activities, pre-petition planning, including structuring and negotiating the proposed "stalking horse" offer, motion review, court appearances and testimony;

2. Identifying prospective purchasers who may be interested purchasing some or all of the Company's assets;

3. Development of an offering memorandum for potential purchasers of the Company's assets;

4. Assistance in providing due diligence information in support of prospective purchasers in the due diligence process;

5. Providing assistance in evaluating and negotiating bids from prospective purchasers;

6. Providing assistance in obtaining court approval of desired transaction, including offering testimony, as appropriate;

7. Providing assistance in closing a transaction;

8. Providing assistance in the development of a plan to wind down the Company post asset sale if required;

9. Providing assistance to management in wind-down process if required; and

10. Assistance with other issues as required by the Company during this engagement.

**Staffing and Fees:**
This project will be staffed with Bruce Erickson as the Chief Restructuring Officer. Additional staff support if necessary will be determined going forward. Professional fees for the above scope will be billed at rates between $195 and $345 per hour depending on the staff member assigned. It is difficult to estimate the total amount of time this engagement will take, particularly as it relates to scope items 8 and 9 above. However, during the first 13 weeks of this engagement, we estimate our fees to be approximately $130,000 as follows:

| Task # | Estimated Timing | Estimated Fees | % |
|---|---|---|---|
| 1 | Weeks 1 thru 11 | 16,600 | 13 |
| 2-3 | Weeks 1 thru 3 | 24,800 | 19 |
| 4-7 | Weeks 4 thru 11 | 58,000 | 45 |
| 8-9 | Weeks 8 thru 13 | 20,700 | 16 |
| 10 | Throughout entire engagement | 9,000 | 7 |
|  |  | $129,100 | 100 |

**Other:**
The above fee estimate does not include any out-of-pocket expenses such as prospective buyer research, virtual data room, or any travel expenses. Any out of pocket expenses will require pre-approval except miscellaneous travel. A Retainer of $15,000 will be due upon execution of this contract (the "Retainer"). This Retainer shall be held by BEG and applied to our final bill hereunder. All professional fees and expenses are billed weekly with time sheets and are payable within 2 weeks.

You may cancel this agreement at any time upon written notice to BEG. However, if you cancel this agreement BEG will be entitled to payment in full for all fees and expenses incurred through our receipt of your written notice of cancellation. Certain terms and conditions hereof as incorporated in the Appendix, including but not limited to Confidentiality, Indemnity and Non-Solicitation, shall survive any termination of this agreement.

Attached hereto as an Appendix are BEG's standard terms and conditions, which are incorporated herein and made a part hereof. By executing this agreement, you acknowledge that you have read the Appendix and agree to be bound by each of those terms and conditions.

**Conclusion:**
If the foregoing accurately sets forth your understanding and agreement, please so indicate by signing and returning the enclosed copy of this letter to me. BEG is committed to providing its best efforts for you in the areas discussed above.

We appreciate the opportunity to present this agreement and look forward to working with you.

Sincerely,

_____                             4/27/16
B Erickson Group LLC                                  Date
By:   Bruce A. Erickson
      Principle

Agreed and accepted:

_____                             2/22/16
Highline United, LLC.                                 Date
Modern Shoe Company, LLC.
By:   Kimberly Bradley
      COO/CFO

### Appendix: General Terms and Conditions

1. **Retainer and Compensation**

(a)    Client agrees that any Retainer to be paid to BEG is intended to be greater than the amount of fees and expenses due to or incurred by BEG under this Agreement at any given time. If the Client fails at any time or for any reason to pay any amounts due under this Agreement, then BEG may apply the Retainer to such unpaid amounts immediately and without prior notice to the Client. The Client hereby grants a first-priority security interest in the Retainer to BEG to secure payment to BEG of all amounts due under this Agreement. If Client does not replenish the Retainer to the required amount within three (3) days of any such BEG request, BEG reserves the right to terminate its engagement immediately, to be paid in full through the termination date within 48 hours, and Client agrees to accept any and all responsibility for damage resulting from any such abrupt termination.

(b)    To the extent a BEG representative is not actually working during travel time, the Client shall be charged travel time for BEG representatives at one-half of the applicable hourly rate. BEG adjusts its hourly rates for services periodically and the Client agrees to pay such rates as adjusted. The Organization will be billed for all out-of-pocket expenses incurred by BEG in the performance of its obligations under this agreement including for travel, meals and lodging, delivery services, etc., and sales taxes will be invoiced to you in any state where required.

2. **Access to Client Personnel and Information and Client Representation Concerning Information Provided to BEG.**

(a)    The Client will provide BEG with full access to all of Client's personnel, books, and records, including those prepared by Client's attorneys and other agents and third-party representatives. The Client represents and warrants to BEG that, except as disclosed to BEG in writing, all information provided or made available to BEG by the Client, its directors, officers, employees, representatives, attorneys and agents at any time shall, to the best of the Client's knowledge: (a) be complete and correct in all material respects; and (b) not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements not misleading in light of the circumstances under which such statements are made. Client agrees that it shall notify BEG if it learns subsequently that any information provided or made available to BEG in accordance with this Agreement is incorrect, inaccurate, or otherwise should not be relied upon.

(b)    The services to the Client under this Agreement may include the preparation of recommendations, projections, and other forward-looking statements. The Client acknowledges that numerous factors may affect the Client's actual financial and operational results and that these results may materially and adversely differ from the recommendations and projections prepared, in whole or in part, by BEG. The Client acknowledges that in rendering its services under this Agreement, BEG will be using and relying upon the information provided by Client, its directors, officers, employees, representatives and agents. Under any of the foregoing circumstances, the Client agrees that BEG shall have no duty to independently verify the reliability, accuracy or completeness of such information. The Client also agrees that BEG shall incur no liability to the Client or any individual or other entity that may arise if any such information proves to be unreliable, inaccurate or incomplete, and the Client hereby agrees to indemnify and hold BEG harmless from any such liability.

3. **Confidential Information.**

(a)    BEG shall not disclose the Client's Confidential Information (as defined below) to any third-party. BEG will only use the Confidential Information to provide services to the Client pursuant to this Agreement.

(b)    Confidential Information shall consist only of proprietary information that is: (i) disclosed to BEG by the Client, its directors, officers, employees, representatives or agents; (ii) acquired by BEG from inspection of the Client's property in connection with this Agreement; or (iii) information produced by BEG from Confidential Information in connection with the provision of services under this Agreement. Confidential Information shall not include any information that is: (i) now or subsequently becomes generally known or available by publication, commercial or otherwise, through no fault of BEG, its employees, agents or contractors; (ii) already known by BEG at the time of the disclosure, provided that such information did not come from a source known by BEG to be bound by a confidentiality agreement with the Client, or from a source that was otherwise prohibited from disclosing such information under a contractual, legal or fiduciary obligation; (iii) becomes available to BEG on a non-confidential basis from a source other than the Client, provided that, to BEG's knowledge, the source was not prohibited from disclosing such information to BEG under a contractual, legal or fiduciary obligation to the Client; (iv) independently developed by BEG, its employees, agents or independent contractors primarily from information that is not Confidential Information; (v) information that the Client and BEG agree, orally or in writing, may be disclosed; (vi) information that is reasonably expected to be disclosed as part of the Scope of this Agreement; or (vii) information that BEG reasonably believes, after consultation with its attorneys, it must disclose pursuant to applicable law, regulation or administrative requirement, including stock exchange rules.

(c)    BEG may make reasonable disclosures of Confidential Information: (i) to third parties in connection with the performance of its services under this Agreement so long as such disclosures are made pursuant to a confidentiality agreement incorporating similar non-disclosure obligations as contained herein; or (ii) in connection with any dispute between BEG and Client under or concerning this Agreement. If BEG receives any request by order, subpoena or other legal process to produce any Confidential Information, then unless otherwise prohibited by law or process, BEG will provide the Client with timely notice of such request. At the Client's request and expense, and unless otherwise prohibited by law or against a recommendation by BEG's counsel, and without relinquishing or modifying its disclosure rights, BEG will cooperate reasonably with the Client under appropriate circumstances to protect the Confidential Information.

(d)    Under no circumstances, shall BEG disseminate or discuss any data received by it or conclusions determined by it from any data received to anyone without the consent of Organization, the Organization being aware and agreeing that this is a less efficient and transparent process than providing BEG with full and unfettered authorization and may impede the speed of returning the Organization's credibility. Client agrees that, should BEG have a need to communicate with any third party, a single request shall be made and, if granted, is assumed to be granted in perpetuity. In return, BEG agrees that any communication to any third party will first be communicated to Client.

4. **No Third-Party Beneficiaries; Use of BEG's Work Product by Client.** The Client acknowledges that all information, whether written or oral, created, prepared, or compiled by BEG in connection with this Agreement is intended solely for the benefit and use of the Client and Client shall have the right to distribute to any third party as it determines appropriate (provided that the third party is not a competitor of BEG) with the understanding that no other individual or entity shall be entitled to rely on such information for any purpose. Client agrees that such information shall not be reproduced, disseminated, quoted or referred to at any time or in any manner other than to the Client's board of directors, officers, employees, representatives, attorneys, and other agents who have a need to receive such information, except upon BEG's prior written consent. Without limiting the foregoing, the Client shall not (and shall not authorize any other individual or entity to) use BEG's name or to make available to third parties any information created, prepared, or compiled by BEG under this Agreement for any reason, including obtaining or extending credit, offering or selling securities or other assets, or in any representations to third parties. It is also expressly agreed that notwithstanding the above restrictions upon the Client, BEG shall have no responsibility or liability relating directly or indirectly to such disclosure by the Client (whether authorized or unauthorized) irrespective of approval by BEG or required by

applicable law, regulation or administrative requirement, including stock exchange rules. The foregoing shall not prohibit references to BEG's engagement in required public filings or court documents.

5.  **Independent Contractor Status.** BEG is an independent contractor to the Client and, accordingly, this Agreement shall not be construed in any way to be an employment agreement for BEG or any of its representatives. Neither BEG nor any of its employees, agents or independent contractors shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent or insider of the Client, unless expressly agreed to in a subsequent writing. BEG may utilize the services of any of employee or contractors to perform services for the Client. BEG shall have exclusive control over its management and operations, including the hiring of and paying wages or other compensation to its personnel. Unless expressly provided otherwise in the Scope, BEG personnel providing services to the Client may also provide services to other past, present or future BEG clients in connection with unrelated matters.

6.  **Appointment as Officer and/or Director.** The Client represents that its officers and directors are covered by appropriate D&O insurance policies. Should the Client subsequently elect any BEG representative as an officer or director of the Client, the Client shall promptly name both BEG and such BEG representative as additional insureds under all of those policies and under any "tail" policies that the Organization may purchase during BEG's engagement. The Organization will promptly provide evidence of such coverage to BEG. The Client agrees that in naming such BEG representative as an officer or director of the Organization such BEG representative will remain at all times an employee of BEG and not become an employee of the Organization and will be compensated solely by BEG. Nothing in this Agreement is intended, deemed or construed to create a fiduciary relationship between BEG or its representatives and the Client and/or any of its directors, officers, members, managers, partners, control persons, shareholders, employees, agents or creditors.

7.  **Indemnity by Client.** As part of the consideration to BEG for its furnishing of services to the Client, the Organization agrees to indemnify and hold harmless BEG, its officers, directors, agents, employees, successors and assigns (each an "Indemnified Party") from any and all claims or liabilities as incurred relating to or arising out of this Agreement including, without limitation, any and all of such Indemnified Parties' reasonable expenses incurred in connection with investigating, preparing, defending or settling any action or claim arising from or relating to such liabilities, including all legal fees, provided that BEG prevails. The Organization shall not be responsible for any losses, claims, damages, liabilities or expenses of any Indemnified Parties only to the extent that it is finally judicially determined that they are due to such Indemnified Party's gross negligence or willful misconduct. The indemnity and expense reimbursement obligations set forth herein shall: (i) be in addition to any liability the Organization may have to BEG; (ii) survive the expiration of BEG's engagement hereunder, (iii) apply to any modification of BEG's engagement by the Client and remain in full force and effect following the completion or termination of the such amendment or modification; and (iv) be binding on the Organization and any of its successors or assigns.

8.  **Non-Solicitation.** For a period of twelve (12) months after the later of: (a) the completion of all services to be provided by BEG under this Agreement; or (b) the written termination of this Agreement, the Client, including any affiliates thereof, shall not hire, retain or utilize (other than through BEG) the services of any of BEG's current or former employees or independent contractors at any time without express written consent of BEG and payment of 33.3% of all compensation to be paid for the first year of hire, with compensation defined as salary, bonus and/or consulting fees. The Client agrees and acknowledges that BEG's remedy at law for any breach of the provisions of this Section would be inadequate and the Client consents that for any breach of such provisions BEG will, in addition to such other remedies as may be available to it at law or in equity, be entitled to injunctive relief and to enforce its rights by an action for specific performance to the extent permitted by law without the posting of any security therefore.

9.  **Joint and Several Liability; Contractual Right of Setoff.** If the Client consists of one or more individuals or entities, the Client agrees that its obligations to BEG shall be joint and several for each individual or entity comprising the Client. The Client hereby represents that it is authorized to enter this Agreement on behalf of all such individuals and entities and, without limiting any other remedy available to BEG under this Agreement or by law, BEG shall have a right of setoff against any claim of any individual or entity comprising the Client.

10. **Jurisdiction; Attorneys' Fees.** The Client and BEG both consent to the exclusive jurisdiction of the federal or state courts located in the State of New Hampshire for the adjudication of any dispute arising hereunder or relating hereto. The Client shall pay all costs and expenses, including attorneys' fees, incurred by BEG to enforce this Agreement, including any indemnity provision or effort to collect sums due to BEG. This obligation to pay BEG's attorneys' fees and expenses shall apply whether they are incurred during trial or appeal, or in arbitration, a bankruptcy case or otherwise. BEG shall additionally be entitled to reimbursement of reasonable legal expenses associated with any court approval of this Agreement or enforcement of provisions of this Agreement, including, but not limited to, fee applications. The Client shall reimburse BEG for all such expenses promptly upon presentation of an invoice for the same.

11. **Consent; Entire Agreement.** In any instance under this Agreement where a party's consent is permitted or required to be given, such consent shall not be withheld unreasonably. This Agreement contains the entire Agreement of the parties with respect to its subject matter, and supersedes all prior agreements and understandings between them. The parties agree that all terms of their agreement and understanding are embodied in this Agreement, and as may be modified or supplemented from time to time only if such modification or supplement is in a writing signed by the party to be charged.

12. **Multiple Originals.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. This Agreement may be executed by facsimile or email signatures.